IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN PAUL DEJORIA | § | |
| Plaintiff/Counterclaim Defendant | § | |
| | § | |
| v. | § | |
| | § | |
| MAGHREB PETROLEUM EXPLORATION | § | |
| S.A., MIDEAST FUND FOR MOROCCO | § | Civil Action No: 1:13-cv-654-LY |
| LIMITED, JOHN DOE #1, and JOHN DOE #2[1] | § | |
| Defendants/Counterclaim Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| MICHAEL H. GUSTIN | § | |
| Third-Party Defendant | § | |

Maghreb Petroleum Exploration S.A.'s and Mideast Fund for Morocco Limited's
Counterclaim and Third-Party Complaint

1.      Counterclaim plaintiffs Maghreb Petroleum Exploration S.A. ("MPE") and
Mideast Fund for Morocco Ltd. ("MFM") bring this counterclaim and third-party complaint
pursuant to Chapter 36 of the Texas Civil Practice and Remedies Code, the Uniform Foreign
Country Money-Judgment Recognition Act, to recognize and enforce a final, conclusive, and
enforceable-in-Morocco judgment issued by the Commercial Appeals Court in Casablanca,
Commercial Court in Rabat, Morocco (the "Morocco Court").

2.      On December 31, 2009, the Morocco Court awarded MPE and MFM a judgment
of 969,832,062.22 Moroccan Dirhams (which is $122,945,610.50 based on the December 31,
2009 exchange rate), against plaintiff/counterclaim defendant John Paul DeJoria ("DeJoria") and
third-party defendant Michael H. Gustin ("Gustin").  The Morocco Court's judgment satisfies the
Uniform Foreign Country Money-Judgment Recognition Act and is enforceable in the same
manner as a judgment of a sister state that is entitled to full faith and credit.

---

[1] The two fictitious entities (John Doe #1 and #2) DeJoria named as defendants have not been
served, have not appeared, and are not counterclaim plaintiffs.

I.

Introduction

3.        DeJoria and Gustin were directors of a Morocco oil and gas exploration company called Lone Star Energy Corporation ("Lone Star").  DeJoria and Gustin caused and induced MPE and MFM to invest millions of dollars in Lone Star and incur millions more in expenses based on DeJoria's and Gustin's false representations.  DeJoria and Gustin falsely represented, among other things, that they had invested $27.5 million in Lone Star, that Lone Star's market value was $175.75 million, and that Lone Star had billions of dollars in oil reserves in Morocco. DeJoria and Gustin fraudulently misrepresented and mismanaged Lone Star's books and records, failed to comply with established financial accounting requirements as documented by the company's auditor KPMG, failed to comply with Morocco law, and then tried to conceal their misconduct.

4.        In 2002, MPE and MFM sued DeJoria, Gustin, and others in Morocco.  In 2009, the Morocco Court granted judgment in favor of MPE and MFM, and against DeJoria and Gustin, in the amount of 969,832,062.22 Moroccan Dirhams, or approximately $122.9 million.

5.        On March 14 and 16, 2013, DeJoria and Gustin officially were served in Texas with a copy of the Morocco Court's judgment, and were given notice of their right to appeal the judgment in Morocco within 45 days.  DeJoria and Gustin did not appeal within the required 45 days, and have not appealed as of today.  The Morocco Court judgment is final and conclusive and enforceable in Morocco where it was rendered.

6.        The Morocco Court judgment fully satisfies and complies with Chapter 36 of the Texas Civil Practice and Remedies Code, the Uniform Foreign Country Money-Judgment Recognition Act.

- Morocco provides impartial tribunals, and Morocco's procedural and substantive law is based on French law and France's legal system. Morocco's procedures are compatible with the requirements of due process in Texas and the United States.

- In this case, the Morocco Court fully complied with Morocco's procedural and substantive law, and carefully evaluated the fact and law before issuing its judgment.

- DeJoria and Gustin were served in the United States with process and a copy of the Morocco Court lawsuit over 5½ years before the Morocco Court issued its December 31, 2009 judgment.

- The Morocco Court appointed independent experts who spent years reviewing and analyzing the relevant financial and accounting books and records. DeJoria and Gustin and their company Skidmore had the opportunity to participate in the independent experts' review process, and Skidmore retained lawyers in France and Morocco to do so.

- The Morocco Court issued a 31-page judgment against DeJoria and Gustin in which the court discussed in detail the relevant evidence, law, liability, and damages.

- While the Morocco Court granted judgment against DeJoria and Gustin, the court did not impose liability on the other five defendants in the Morocco Court lawsuit.

7.    While the Morocco Court lawsuit was pending, companies controlled by DeJoria and/or Gustin filed a near-mirror-image lawsuit in the U.S. District Court for the Northern District of Texas and sought "$3 Billion" in damages against MPE, MFM, and others, and then later also filed yet another near-mirror-image lawsuit in the U.S. District Court for the Central District of California.   Both federal district courts dismissed the lawsuits filed by the DeJoria/Gustin controlled companies.

- The Northern District of Texas dismissed the DeJoria/Gustin-controlled company's lawsuit, denied an anti-suit injunction seeking to enjoin the Morocco Court lawsuit, found the DeJoria/Gustin-controlled companies' claims to be frivolous, and imposed over $530,000 in sanctions against them and their lawyer. The U.S. Court of Appeals for the Fifth Circuit found their lawsuit to be "wholly frivolous" and affirmed the full amount of the sanctions. *Skidmore Energy, Inc. v. KPMG, et al.,* 455 F.3d 564, 570 (5th Cir. 2006).

- The Central District of California dismissed the DeJoria/Gustin-controlled company's other lawsuit. The U.S. Court of Appeals for the Ninth Circuit affirmed the dismissal and, in doing so, noted that "Most of the events in this case related to and occurred in

Morocco." *Skidmore Energy, Inc. v. Maghreb Petroleum Exploration S.A.*, 337 Fed. Appx. 706, 707 (9th Cir. July 16, 2009).

8.     This Moroccan Court's $122.9 million judgment against DeJoria and Gustin is entitled to be recognized and enforced by this Court.

II.

Parties

9.     Defendant and counterclaim plaintiff Maghreb Petroleum Exploration S.A. ("MPE"), formerly known as Lone Star Energy Corporation, is a limited liability company organized and existing under the laws of Morocco.

10.     Defendant and counterclaim plaintiff Mideast Fund for Morocco ("MFM"), formerly known as Armadillo Holdings Ltd., is a corporation organized and existing under the laws of Liechtenstein.  MFM is the majority shareholder of MPE.

11.     Plaintiff and counterclaim defendant John Paul DeJoria ("DeJoria") is an individual residing in Austin, Texas, and may be served with process and a copy of this complaint at 2934 Oestrick Lane, Austin, TX 78733, and also has appeared and may be served through his counsel of record in this case.  As of March 2013, *Forbes.com* ranked DeJoria as the 106th richest billionaire in the United States with an estimated net worth of $4 billion.  DeJoria is a co-founder and was a director of Lone Star Energy Corporation ("Lone Star"), now known as MPE.  DeJoria also is the co-founder of John Paul Mitchell Systems (a hair care products business with annual revenues of $900 million), co-founder of Patron Spirits Company (which sells more than 2 million cases of tequila per year), and co-founder of the House of Blues nightclub chain (purchased in 2006 by Live Nation for $350 million).  DeJoria was a director in Skidmore Energy, Inc. ("Skidmore") and, together with Skidmore and Gustin, he used to hold a majority interest in Lone Star.

12.     Third-party defendant Michael H. Gustin ("Gustin") is an individual residing in Fort Worth, Texas, and may be served with process and a copy of this complaint at 150 Boland Road #307, Fort Worth, TX 76107.  Gustin is a co-founder and was president, chairman, and a director of Lone Star, now known as MPE.  Gustin was a director in Skidmore and, together with Skidmore and DeJoria, he used to hold a majority interest in Lone Star.

III.

Jurisdiction and Venue

13.     This Court has jurisdiction under 28 U.S.C. § 1332(a)(2).  MPE is a citizen of Morocco, and MFM is a citizen of Liechtenstein.  MPE and MFM do not have a principal place of business in the United States, and do not conduct business or maintain property in the United States.  DeJoria and Gustin are citizens of the United States.  The amount in controversy exceeds the statutory minimum, exclusive of interest and costs.

14.     DeJoria and Gustin have had continuous and systematic activities in the State of Texas.  DeJoria and Gustin own property in Texas.  DeJoria and Gustin have formed business entities under the laws of Texas.  DeJoria and Gustin have availed themselves of Texas courts and have filed suit against others, including MPE and MFM, in Texas.

15.     This Court's exercise of personal jurisdiction over DeJoria and Gustin is proper, and would not offend traditional notions of fair play and substantial justice.

16.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b), 1441(a), and 1446(b).

IV.

Facts Underlying the Morocco Court's Judgment

17.     *In Beluga Chartering B.V. v. Timber S.A.,* 294 S.W.3d 300, 305 (Tex. App. – Houston [14th Dist.] 2009, no pet.), the court explained that under the Uniform Foreign Country

Money-Judgment Recognition Act's "express language, the trial court 'may not, under any circumstances, review the foreign country judgment in relation to any matter not specified in Section 36.005.'"  (*Quoting* Tex. Civ. Prac. & Rem. Code § 36.044(g)).  In *Dart v. Balaam,* 953 S.W.2d, 478, 480 (Tex. App. – Ft. Worth 1997, no writ), the court explained that "In limiting the defenses that may be raised by a judgment debtor, the Recognition Act creates standards for recognizing foreign judgments and prevents parties from relitigating issues that were conclusively settled by courts of foreign countries, unless such issues create an exception to recognition….The Recognition Act precludes a judgment debtor from collaterally attacking a foreign judgment where an issue was litigated before a foreign court or the party was given the opportunity to litigate the issue before that court."  (Citing *Banque Libanaise Pour Le Commerce v. Khreich,* 915 F.2d 1000,1004 (5th Cir. 1990), and other cases); *see also Beluga Chartering,* 294 S.W.3d. at 304.  Thus, it is neither necessary nor appropriate for the facts underlying the Morocco Court's judgment to be litigated or relitigated in this Court, and the discussion of such facts in this Counterclaim/Third-Party Complaint is provided for background purposes only.

18.     On July 20, 1999 DeJoria, Gustin, and others formed a company called Lone Star Energy Corporation ("Lone Star") with its headquarters in Rabat, Morocco, to explore for and exploit hydrocarbons in Morocco.  DeJoria and Gustin were directors of Lone Star and they, together with their company Skidmore, held approximately 90% of the shares of Lone Star.

19.     Article 22 of Lone Star's Articles of Association provided that its directors, including DeJoria and Gustin, "are responsible towards the company, third parties, either for breach of the legal provisions governing limited liability companies, particularly those stipulated by Articles 384 to 386 of law 17-95 relative to limited liability companies, or for violations of the present Articles of Association, or for mistakes made in their administration, all under

conditions and under penalty of sanctions laid down by the legislation in force."   Article 41

provided that "Any disputes that may arise during the course of the Company or its liquidation,

either between the shareholders and the Company, or between shareholders themselves,

concerning social affairs, interpretation or implementation of the present Articles of Association,

are referred to the competent courts where the registered office located."  Lone Star's "registered

office" was in Rabat, Morocco.

20.    In March 2000, Lone Star and the Kingdom of Morocco entered into an

"Investment Agreement" that obligated Lone Star (then controlled by DeJoria and Gustin) to

invest in hydrocarbon exploration in Morocco in connection with obtaining mineral rights

concessions and other benefits from Morocco.   On behalf of Lone Star, Gustin signed the

agreement as its president and agreed in Articles 1 and 3 to drill at least three exploration wells

in Morocco and invest over $150 million to explore for hydrocarbons in Morocco.  On behalf of

Lone Star, Gustin agreed in Article 14 that "Any misunderstanding concerning the interpretation

and execution of this agreement shall be submitted by the most diligent party to the

Administrative Court of Rabat, the sole competent Court in this matter."

<u>DeJoria and Gustin Fraudulently Induced MFM</u>
<u>to Invest Millions in their Morocco Exploration Company Lone Star</u>

21.    On August 23, 2000, Gustin, DeJoria, and their company Skidmore entered into a

Memorandum of Understanding ("MOU") with Armadillo Holdings Ltd. (now called MFM).

The Memorandum of Understanding defined the term "Skidmore" as including "Skidmore

Energy, Inc., John Paul DeJoria, Michael H. Gustin."   To induce Armadillo/MFM to invest

millions of dollars in Lone Star, DeJoria, Gustin, and Skidmore misrepresented in paragraph 3 of

the MOU (and otherwise) that the value of their investment in Lone Star at the time was $27.5

million and that Lone Star's "conservative market value" was $175.75 million.   DeJoria and

Gustin agreed to provide proof of Skidmore's investments in Lone Star; they never did.   In paragraph 4 of the MOU, Armadillo/MFM agreed to contribute $13.5 million to Lone Star in exchange for 50% of the Lone Star shares held by Gustin, DeJoria, and Skidmore and 50% of "all assets including, exploration licenses, technology licenses, SBK#1 well and lease, all inventories and supplies, etc."  Armadillo/MFM fulfilled this obligation.

22.     As part of their efforts to induce Armadillo/MFM to invest millions in Lone Star, DeJoria and Gustin provided Armadillo/MFM with a July 26, 2000 letter from Lone Star's CFO in which he purportedly "summarized the $27.5 million US investment to date by you [Gustin] and your partner, John Paul DeJoria."  DeJoria and Gustin also provided Armadillo/MFM with a July 26, 2000 "Project Lone Star 3-Year Budget and Cash Flow Summary" in which they budgeted three year total revenues of $2.05 billion," year 1 total reserve value of $6.8 billion, year 2 total reserve value of $7.9 billion, and year 3 total reserve value of $7.9 billion as well. DeJoria and Gustin represented in their "Budget and Cash Flow Summary" that "One billion barrels of reserves is projected to be discovered by end of September 2001," and "Daily production reaches 100,000 barrels of oil (Morocco's current import level) by February 2002." DeJoria and Gustin also represented in their "Budget and Cash Flow Summary" that "50% Interest is worth – 50% of $351.5 million US, or $175.75 million.  They also represented that "the exclusive-use license for the SRM$^{TM}$/MBS$^{TM}$ Technology in Morocco is worth a minimum of $100 million US."

23.     In paragraph 6 of the MOU, DeJoria, Gustin, Skidmore, and Armadillo/MFM "agreed that all parties will be bound by Moroccan pre-emptive rights."  In paragraph 9, the parties agreed that all notices to Lone Star would be sent to its address in Rabat, Morocco.

<u>KPMG's Audit Revealed DeJoria's and Gustin's Multi-Million Dollar Fraud</u>

24.     On October 30, 2000, DeJoria, Gustin, Skidmore, and Armadillo/MFM signed an Addendum to their August 23, 2000 MOU and agreed that "the final numbers for the investments made by both Skidmore and Armadillo in Lone Star will be born of a specific KPMG audit.  It is also agreed that numbers appearing in the 23rd of August MOU between Skidmore and Armadillo as investments made to date, will be modified and rectified according to the conclusions of the KPMG audit."  DeJoria, Gustin, and Skidmore apparently were worried that KPMG's audit would reveal the falsity of the representations they used to induce Armadillo/MFM to invest $13.5 million.  On December 7, 2000, Gustin wrote to "His Majesty The King" of Morocco asking him "to assist John Paul DeJoria and myself to solve the very critical problem that arose from the participation of Armadillo with Lone Star Energy Corp.," noting that "a very bad atmosphere of misunderstanding and distrusting has reached a point where a definitive solution must be found," and despite having agreed to KPMG's audit in a written addendum to the MOU, Gustin complained that Armadillo/MFM was "hiding behind a request for a completed audit which was not in the original M.O.U."

25.     On April 11, 2001, Skidmore, MFM (by this time, Armadillo had changed its name to MFM), and an entity called Mediholding entered into another Memorandum of Understanding "in order to rectify the critical financial situation of Lone Star Energy Corporation."  (Mediholding was a minority shareholder in Lone Star.)  MFM agreed to invest an additional $10 million in Lone Star within five working days after it received another 2,200 shares in Lone Star and after "Verification of all amounts" in Lone Star's accounts in its operational budget for 2001.

26.    On May 9, 2001, the major international accounting and auditing firm KPMG issued an "Auditor's Report" of Lone Star.  In that report, KPMG stated that it could not verify or substantiate $17 million that DeJoria, Gustin, and Skidmore misrepresented they had paid to a seismic data company in Texas called Geoscience International ("Geoscience").   (MFM later discovered that Gustin was a founder and director of Geoscience, something DeJoria and Gustin failed to disclose at the time.)  On July 14, 2001, KPMG issued another report and determined that DeJoria, Gustin, and Skidmore had invested only $3,708,812.49 in Lone Star, not the $27.5 million they misrepresented to Armadillo/MFM.   KPMG also reported that Lone Star, while Gustin was its Chairman and DeJoria was a director, had transferred $1,737,000 back to Skidmore, and KPMG noted that the "explanations and/or supporting documents of the funds transferred back by your company to Skidmore Energy for [$1,737,000] were not presented to us."   KPMG's audit also revealed that Skidmore had withdrawn over $1.7 million from Lone Star's accounts without supporting claims, invoices, or other proof of expenses.

27.    Following KPMG's May 9, 2001 audit report, MFM declined to invest more money in Lone Star.   The damage from DeJoria's and Gustin's misrepresentations, mismanagement, and malfeasance had been done.  Several suppliers and servicers that had not been paid ceased doing critical work and business with Lone Star, which caused Lone Star's drilling and exploration activities to stop.

DeJoria and Gustin Invoked Morocco Law and Threatened Legal Action

28.     On May 22, 2001, the board of directors of Lone Star met and replaced Gustin as Chairman.  DeJoria and Gustin received notice of the board meeting and were invited to attend, but did not.  DeJoria and Gustin also received notice of, but did not attend, subsequent board of directors meetings and general assembly meetings.

29.     On July 31, 2001, DeJoria and Gustin were removed as directors, Lone Star was recapitalized with an additional investment by MFM of $15.9 million, and Lone Star changed its name to Maghreb Petroleum Exploration S.A. ("MPE").  DeJoria, Gustin, and Skidmore were invited to participate in the recapitalization, but did not.  In its December 31, 2009 judgment, the Morocco Court addressed this and explained that Lone Star/MPE was "compelled to resort to this solution in an attempt to limit the damage inflicted on Lone Star Energy's reputation as a result of the dishonest actions perpetrated by Messrs. Gustin and Dejoria*, with the participation of Messrs. Thomas and Sobehrad, in their dealings with contractors, the Moroccan government, and international circles." Exhibit 1 at 7.  An English language translation of the Morocco Court's December 31, 2009 judgment is attached as Exhibit 1, and a copy of the Morocco Court's December 31, 2009 judgment in the Arabic language is attached as Exhibit 2.

30.     On September 6, 2001, Gustin, with a cc to DeJoria, wrote to Lone Star/MPE and complained that "actions of the majority shareholder [Armadillo/MPE] are in violation of Skidmore's rights as a foreign investor under Moroccan legislation and the international treaty commitments of Morocco" and threatened "to take all necessary legal action to enforce our rights as a minority shareholder and as a foreign investor."  On September 16, 2002, Gustin wrote to Lone Star/MPE, KPMG, and others that Skidmore intended to file a lawsuit and wrote that

"Should we prevail in the pending litigations, we intend to enforce judgment against assets of the defendants worldwide."

<u>MPE and MFM Filed Suit in Morocco</u>

31.     On September 16, 2002, MPE and MFM filed a "civil claim of damages" in the Commercial Appeals Court in Casablanca, Commercial Court in Rabat, Morocco against DeJoria and Gustin and five affiliated parties.  In their Morocco Court lawsuit, MPE and MFM sought damages and alleged among other things:

- "Fictitious subscription of payment of capital" in violation of Article 379 of Moroccan Law No. 17/95, which states that "such actions are errors in management on the part of those who gained or attempted to gain subscriptions or payments through fictitious subscriptions or payments, by publicizing subscriptions or payments that do not exist, or by means of any other false act."

- "Providing fabricated financial statements" in violation of Article 384(2) of Moroccan Law No. 17/95 which renders liable "individuals who intentionally, even if no profits were distributed, and for purposes of hiding the company's real status, published or provided annual financial statements, to shareholders, that do not reflect an honest picture of the results achieved for each fiscal year, the company's current status and its financial obligations at the end of that period."

- "Hindering auditors' tasks" in violation of Article 406 of Moroccan Law No. 17/95 by "intentionally hinder[ing] the audits and reviews conducted by the experts and auditors appointed pursuant to Article 159 of Law No. 17/95, or refus[ing] to grant them onsite access to all the documents necessary to perform their duty."

- "Misuse of Joint Funds" in violation of Article 384(3) of Moroccan Law No. 17/95 by using "Lone Star's funds and credits in a manner they knew to be contrary to the Company's economic interests" and doing so "to achieve personal objectives or to advance a company or contract in which they had direct or indirect interest, namely Skidmore and/or Geoscience."

Exhibit 1 at 7-10.

32.     By July 2004 at the latest, DeJoria, Gustin, and the five other defendants in the Morocco Court lawsuit had been served in the United States with formal process and notice of the Morocco Court lawsuit.

- On May 28, 2003, Gustin personally accepted service of the Morocco Court lawsuit at his residence, then in Georgetown, Texas.

- On May 28, 2003, DeJoria's housekeeper accepted service of the Morocco Court lawsuit at DeJoria's residence in Malibu, California.

- On July 14, 2004, DeJoria signed a notarized affidavit and swore under oath that "I recently received a caller at my personal residence in Austin, Texas . . . . The messenger presented me with a gift-wrapped package and he stated that it was a token of their thanks. When I opened the package it contained only a copy of the Moroccan lawsuit." Two days later, on July 16, 2004, DeJoria filed his affidavit in the U.S. District Court for the Northern District of Texas. Thus, over 5 ½ years before the Morocco Court issued its judgment, DeJoria himself personally was served with the Morocco Court lawsuit at his residence in Austin, Texas.

- In his now-pending lawsuit, DeJoria lied about and tried to conceal the fact that he properly and personally was served nine years ago with the Morocco Court lawsuit.

- In paragraphs 14 and 15 of his now-pending lawsuit removed to this Court, DeJoria falsely represented that the May 2003 service in California was the only time MPE and MFM even tried to serve him with the Morocco Court lawsuit. DeJoria deceptively did not to tell the court about his sworn affidavit admitting he personally was served in 2004 at his residence in Austin, Texas residence. DeJoria's meritless claims are based in large part on DeJoria's lie.

33.      Contrary to DeJoria's false representations in his lawsuit now pending before this Court, the fact is that DeJoria and Gustin both were served with process and the Morocco Court lawsuit some nine years ago. And DeJoria and Gustin both received actual notice of the Morocco Court lawsuit and the Morocco Court proceedings in sufficient time to defend, several years before the Morocco Court issued its December 31, 2009 judgment.

34.      The Morocco Court determined that it had subject matter jurisdiction and had and properly could exercise personal jurisdiction over DeJoria and Gustin.

<u>Skidmore Filed Suit in U.S. District Court for the Northern District of Texas,
the Court Dismissed and Imposed $530,000 in Sanctions, and the Fifth Circuit Affirmed</u>

35.      On September 19, 2003, one year and three days after MPE and MFM filed suit in Morocco, DeJoria/Gustin's companies Skidmore and Geoscience filed what they called a "$3 Billion" lawsuit in the United States District Court for the Northern District of Texas. In

*Skidmore Energy, Inc. and Geoscience Int'l, Inc. v. KPMG et al*., Case No. 3:03-cv-02138-B (N.D. Tex. Sept. 19, 2003) (Boyle, J.), Skidmore and Geoscience sued MPE, MFM, KPMG, and 18 other individuals and entities, and alleged antitrust and RICO violations, breach of contract, fraud, and aiding and abetting breach of fiduciary duty.  Skidmore and Geoscience alleged that DeJoria and Gustin invested in Skidmore and "met personally with King Mohammed VI on two different occasions."

36.      On July 14, 2004, Skidmore and Geoscience moved the U.S. District Court for the Northern District of Texas to enter an anti-suit injunction enjoining MPE and MFM from continuing to litigate their Morocco Court lawsuit.  On December 3, 2004, the U.S. District Court denied Skidmore's and Geoscience's motion for an anti-suit injunction.  *See Skidmore Energy, Inc. v. KPMG et al., 2004 WL 2804888, *8 (N.D. Tex. Dec. 3, 2004).*

37.      In a series of orders issued by December 28, 2004, the U.S. District Court granted motions to dismiss filed MPE, MFM, KPMG, and the other 18 defendants, and dismissed all of Skidmore's and Geoscience's claims against all of the defendants.

38.      On March 17, 2005 and May 18, 2005, the U.S. District Court awarded $530,667.32 in sanctions against DeJoria/Gustin's companies Skidmore Energy, Geoscience, and their lawyer Gary Sullivan, and in favor of MPE, MFM and nine of the other defendants. *Skidmore Energy, Inc. and Geoscience Int'l, Inc. v. KPMG et al*., Case No. 3:03-cv-02138-B (N.D. Tex. Mar. 17, 2005 and May 18, 2005).  The U.S. District Court agreed that Skidmore's and Geoscience's lawsuit against MPE, MFM and others was "factually and legally groundless," noted that the "common thread weaving its way through this case . . . is the puzzling lack of legal or factual support articulated for the pleadings," and repeatedly noted Skidmore's and Geoscience's "failure to articulate any evidentiary support for their claims."  *Id.*

39.     In a March 17, 2005 order, the U.S. District Court agreed with MPE, MFM and the other defendants that Skidmore and Geoscience took "a commercial legal dispute in Morocco between well-defined parties and used it as a vehicle to harass and embarrass them by suing numerous individuals with little or no connection to the dispute and publicly accusing them in the suit of unfounded sensational wrongdoing."  *Id.*  The U.S. District Court noted that Gustin was "Skidmore's owner" and that he, in particular, was "entirely unable to articulate factual nexus between any of the Defendants" and any of the "sensational allegations peppered throughout the complaint."  The U.S. District Court held that, "because the Court further finds that reasonable factual and legal inquiries would have prevented this suit from being filed against these eleven defendants, the Defendants are awarded all of their reasonable attorneys' fees they expended in defending this suit."

40.     In a May 18, 2005 order, the U.S. District Court awarded MPE, MFM and nine other defendants $530,667.32, with 25% of the award to be paid by Skidmore and Geoscience, and 75% to be paid by their attorney.

41.     In *Skidmore Energy, Inc. v. KPMG, et al.,* 455 F.3d 564, 568 (5th Cir. 2006), the U.S. Court of Appeals for the Fifth Circuit affirmed the district court's award of $530,667.32 in sanctions against Skidmore, Geoscience, and their attorney.  The Fifth Circuit explained:

> The district court did not abuse its discretion in awarding Defendants-Appellees their reasonable attorneys' fees and expenses as Rule 11 sanctions for the filing of this wholly frivolous lawsuit.  This sanction was imposed for both the legally frivolous nature of the suit and the obvious lack of evidentiary support for the sensational allegations in the Complaint; and liability for the sanctions award was appropriately apportioned between Appellants and their trial counsel.

*Id.* at 570.

42.     In its opinion, the Fifth Circuit discussed MPE's and MFM's Morocco Court lawsuit.  The Fifth Circuit noted that "One year after they were sued in Morocco for their alleged

breach of contract, fraud, and mismanagement of the venture in which they were involved, Appellants [Skidmore and Geoscience] filed the instant lawsuit in the Northern District of Texas addressing the same matters already being litigated against Appellants in Morocco."

Skidmore Filed Suit in U.S. District Court for the Central District of California,
the Court Dismissed, and the Ninth Circuit Affirmed

43.     DeJoria/Gustin's company Skidmore was not deterred by the U.S. District Court for the Northern District of Texas's dismissal of its claims and imposition of over $530,000 in sanctions.

44.     On June 29, 2005, Skidmore filed another lawsuit in the United States, this time in the U.S. District Court for the Central District of California.  In *Skidmore Energy, Inc. v. Mediholdings S.A. et al*., Case No. 2:05-cv-04742 (C.D. Cal. June 29, 2005), Skidmore sued MPE, MFM, and five other individuals and entities for breach of contract, fraud, and breach of fiduciary duty.  Skidmore and Geoscience alleged that DeJoria and Gustin invested in Skidmore and "met personally with King Mohammed VI on two different occasions."

45.     On October 11, 2006, the U.S. District Court for the Central District of California granted MFM's motion to dismiss.  *Skidmore Energy, Inc. v. Mediholdings S.A. et al*., Case No. 2:05-cv-04742 (C.D. Cal. Oct. 11, 2006) (Cooper, J.).  On October 24, 2007, that district court granted MPE's and other defendants' motion to dismiss, and noted that "the record reflects that the various contracts (memoranda of understanding) between Skidmore, Mediholding and MPE were entered into, negotiated and/or ratified in Morocco or Liechtenstein, that any payments due thereunder were to go to Lone Star/MPE (in Morocco) or Skidmore (in Texas), and that all disputes are to be governed by international law.  More importantly, the *subject matter* and future consequences of the parties' agreements involved oil and gas operations *exclusively* in

Morocco – i.e., the Talsinnt Field." *Skidmore Energy, Inc. v. Mediholdings S.A. et al.*, Case No. 2:05-cv-04742, at 11–12 (C.D. Cal. Oct. 24, 2007) (emphasis in original).

46.    In *Skidmore Energy, Inc. v. Maghreb Petroleum Exploration S.A.*, 337 Fed. Appx. 706, 707 (9th Cir. July 16, 2009), the Ninth Circuit affirmed the district court's dismissal of Skidmore's lawsuit.  The Ninth Circuit found that "Most of the events in this case related to and occurred in Morocco."  *Id.*  In their appellees' brief to the Ninth Circuit, MPE and MFM noted that "In September, 2002, MPE and MFM filed suit in Morocco against Skidmore, DeJoria, Gustin and others seeking damages for fraud, abuse of corporate assets and related claims.  That suit is ongoing." and noted that "The most efficient forum is where the activities complained of took place and where the evidence is located, namely Morocco."  *Skidmore Energy, Inc. v. Maghreb Petroleum Exploration S.A.*, 2008 WL 4205209, *3 (July 31, 2008) (citations omitted).

47.    Skidmore and Geoscience also filed a third lawsuit in the U.S., in Hill County, Texas, and that lawsuit also was dismissed.

V.

The Morocco Court's $122.9 Million Judgment is Enforceable in the U.S.

48.    The Morocco Court's December 31, 2009 judgment is entitled to recognition and enforcement under the Uniform Foreign Country Money-Judgment Recognition Act, Texas Civil Practice and Remedies Code § 36.001 et seq.  An English language translation of the Morocco Court's December 31, 2009 judgment is attached as Exhibit 1, and a copy of the Morocco Court's December 31, 2009 judgment in the Arabic language is attached as Exhibit 2.

49.    On September 16, 2002, MPE and MFM filed suit against DeJoria, Gustin, Skidmore, Geoscience, and three others in Morocco.  The Morocco Court devoted over seven years to analyzing the facts, liability, and damages, and utilized the assistance of multiple

independent experts.  On December 31, 2009, the Morocco Court ultimately entered judgment against DeJoria and Gustin, but not against the five other defendants.

<u>The Morocco Court Appointed Multiple Independent Experts</u>

50.    In October 2005, the Morocco Court appointed three independent accounting experts, Saleh Al-Ghazouli, Al-Saadiya Fatthi, and Mohamed Al-Karimi, to review the documents submitted in the case file and compare them to those in MPE's possession, to verify that MPE's accounts are in order and review other documents related to the case, quantify the capital of MPE, to quantify the contributions made by Skidmore, Gustin, and DeJoria, and determine the subscription dates and payments and verify all transactions mentioned in MPE's complaint, to determine all banking transactions related to the matter, to verify the accuracy and truthfulness of the financial statements, to review KPMG's audit reports and related materials, and to determine the value of the damages and losses that may have been incurred by MPE and MFM as a result of the actions of DeJoria, Gustin, and the other defendants.  Exhibit 1 at 11.

51.    On September 3, 2007, the Morocco Court appointed a fourth independent expert, Ahmed Khordale, to investigate further the issues in the case and, in particular, to visit MPE's headquarters to inspect its accounting documents and business ledgers, to quantify Lone Star's investments up to August 23, 2000, the date when MFM signed the first MOU with Skidmore, to quantify the value of the shares held by Skidmore, Gustin, and DeJoria as of October 30, 2000, to determine the services and work performed by Geoscience for MPE and whether the amounts Geoscience received from MPE equaled the value of the work and services, and to determine the damages that MPE and MFM may have suffered as a result of DeJoria's, Gustin's, and the other defendants' conduct.  As part of his court-ordered investigation, expert Khordale planned and held several "expert process" meetings with representatives of Lone Star/MPE, MFM, and the

defendants.  The purpose of these expert process meetings was, among other things, to review accounting and financial documents.  Expert Khordale provided notices of these expert process meetings to all seven of the Morocco Court defendants, including DeJoria and Gustin.

52.     DeJoria's and Gustin's company Skidmore retained Morocco attorney Amina Ben Brik who, along with others working with her, represented DeJoria, Gustin, and Skidmore in connection with these Morocco Court expert process meetings.  For example, Ben Brik sent Samia al-Abassi to attend the November 16, 2007 expert process meeting on her and defendants' behalf.  Ben Brik also sent Fatima al-Zahraa al-Abassi to attend the March 12, 2008 expert process meeting on her and defendants' behalf and, at this March 12, 2008 meeting, al-Zahraa al-Abassi submitted a memorandum dated March 11, 2008 in which she affirmed that all documents related to Skidmore's finances could be found at MPE's headquarters in Rabat.

53.     On January 22, 2009, expert Khordale submitted his 69-page Expert Report, plus exhibits, to the President of the Commercial Court in Rabat.  Khordale determined that while Lone Star was under DeJoria's and Gustin's control, certain "financing transactions recorded in favor of Skidmore Energy were unjustified and unsupported," there were "no sufficient proofs are found in the documents pertaining thereto," and there was insufficient support for at least $16.6 million worth of Geoscience invoices and insufficient evidence of payment of those invoices.  Khordale determined that Lone Star's financial statements "do not truly reflect the financial results achieved for the said year."  Khordale also determined, similar to the findings of the U.S. federal courts years earlier, that "It is noteworthy that the legal representative of Lone Star Energy, Mr. Michael Gustin, is at the same time the legal representative of Skidmore Energy and that Mr. Dejoria, the deputy general manager of Lone Star Energy is at the same time, the leading official in charge of Skidmore Energy.  On the other side, Mr. Michael Gustin, the legal

representative of Lone Star Energy is the chief official in charge of Geoscience International Inc."  Khordale noted that along with "this confusion of responsibilities by the management of Lone Star Energy can be considered the following errors:  conflicts of interest, prioritizing a company's interest over another, carrying forward and using the Company's funds in a manner contrary to its private interests, disposition of the construction funds, as if they were private money belonging to the management, and provision and presentation of financial statements that do not truly reflect the financial status of the company."  Khordale concluded that MPE and MFM suffered damages of 984,834,573.66 Dirhams and noted that this amount "represents an insignificant part of the damages that the Company may experience in the future as a result of the errors in management committed by the Defendants."

The Morocco Court's Judgment

54.    On December 31, 2009, the Morocco Court issued its judgment.  The Morocco Court found that "defendants Michael Gustin, in his capacity as chairman of the board and administrator at Lone Star (formerly Maghreb Petroleum Company, Claimant), and John Paul DeJoria, in his capacity as principal administrator therein, committed several errors, either in the form of violation of the legislative provisions applicable to joint stock companies, or in the form of errors in management."  Exhibit 1 at 15.

55.    The Morocco Court discussed in considerable detail the facts with respect to DeJoria's and Gustin's conduct and liability and noted, among many other things, that Gustin acted "beyond the scope of an ordinary operations," "committed an act forbidden by law," "misused the Company's funds with ill intentions for purposes other than those of the Company and to further his own personal interests, Gustin's conduct was an "error invoking civil liability (in that sense, i.e., abuse of company funds by the chairman of the board)," and that Gustin's

conduct with respect to Geoscience "is a violation of the legislative provisions applicable to joint-stock companies and thus an error invoking civil liability."

56.     The Morocco Court found in its judgment that "Michael Gustin and Paul DeJoria submitted a number of expenses and payments to Geoscience that were not justified by invoices or receipts.  Further, they failed to follow currently applicable accounting standards.  These expenses and payments, which are associated with fraudulent spending for purposes other than the Company's objectives and in furtherance of their own interests, totaled 85,731,503.40 dirham.  Therefore, Messrs. Michael Gustin and John Paul DeJoria maintained accounts that did not comply with organizational specifications and are considered an error in management invoking civil liability . . . ."  The Morocco Court found that "the file documents prove that the defendant John Paul DeJoria shares in the civil liability arising from the errors he committed with Michael Gustin.  These errors including undertaking transactions and expenses that are unjustified or do not comply with accounting standards, particularly in favor of Geoscience. That is because he was, or should have been aware, of the errors at the time in light of his role as principal administrator of Lone Star and member of its board of directors responsible for managing its affairs."

57.     The Morocco Court found that DeJoria's and Gustin's "random management of the Company also rendered it unable to pay the sums owed to suppliers, namely the Crosco Company which was hired to perform drilling and exploration work in search of petroleum resources."  The Morocco Court found that DeJoria and Gustin "submitted false information including financial indicators," and that this and other misconduct by DeJoria and Gustin "constitutes an error in management invoking civil liability in light of Article 352 of Law No.

17/95 on Joint Stock Companies."   The Morocco Court found that DeJoria's and Gustin's misconduct caused MPE to suffer damages in the amount of 763,587,534.05 dirhams."

58.     The Morocco Court also found that DeJoria's and Gustin's misconduct caused MFM to suffer damages.   The Morocco Court found that DeJoria and Gustin effectively defrauded MFM into investing in Lone Star/MPE in the first place by misrepresenting the amount of their investment and the value of the company.   The Morocco Court explained that MFM invested "based on the erroneous information pertaining to the financial status of Maghreb Petroleum (formerly Lone Star) as mentioned in the 08/23/2000 agreement.   According to the report of the expert, Mr. Khordale, this damage is valued at 206,244,528 dirhams.   But for provision of this false information, the aforementioned agreement would not have taken place." While the Morocco Court imposed liability on DeJoria and Gustin, it did not impose liability on the five other defendants before it.

59.     In its December 31, 2009 judgment, the Morocco Court found and ordered that DeJoria and Gustin were jointly and "collectively" liable to MPE in the amount of 763,587,534.05 Dirhams (approximately $96,799,991.69 at the December 31, 2009 exchange rate), and jointly and "collectively" liable to MFM in the amount of 206,244,528.17 Dirhams (approximately $26,145,618.84 at the December 31, 2009 exchange rate).

60.     The total amount of the Morocco Court's judgment in favor of MPE and MFM, and against DeJoria and Gustin, is 969,832,062.22 Dirham, which is approximately 15,000,000 Dirham less than the amount in expert Khordale's report.

61.     The Morocco Court's judgment was rendered under a judicial system that provides impartial tribunals and procedures compatible with the requirements of due process of law, and actually did provide such a tribunal and procedures in the Morocco Court lawsuit at

issue.   The Morocco Court had personal jurisdiction over DeJoria, Gustin, and the other defendants, and the Morocco Court had jurisdiction over the subject matter.   DeJoria and Gustin had notice and opportunity to appear, present evidence, and be heard in the Morocco Court lawsuit.   The causes of action at issue in the Morocco Court lawsuit involved individual and corporate duties and obligations substantially similar to such duties and obligations well recognized in Texas and the U.S., and the causes of action are consistent with U.S. and Texas public policy.

<u>DeJoria and Gustin Were Served in the U.S. with the Morocco Court's Judgment</u>

62.   On March 14, 2013, DeJoria was served in person in Austin, Texas, with a copy of the Morocco Court's judgment, a translation of the judgment into English, a document in the Arabic language referred to as an "envelope," a translation of the "envelope" into English, and a recommended Hague Convention form containing a warning and a summary, in accordance with Article 10(c) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

63.   On March 16, 2013, Gustin was served in person in Fort Worth, Texas, with a copy of the Morocco Court's judgment, a translation of the judgment into English, a document in the Arabic language referred to as an "envelope," a translation of the "envelope" into English, and a recommended Hague Convention form containing a warning and a summary, in accordance with Article 10(c) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

64.   In the papers served on them, DeJoria and Gustin were informed that, under Morocco law, they each had 45 days from the dates on which they were served to file an appeal in Morocco, otherwise the Morocco Court's judgment would become final and non-appealable.

Neither DeJoria nor Gustin filed any appeal or notice of appeal in Morocco within 45 days, and have not done so as of today.

65.     As a matter of Morocco law, the Morocco Court's December 31, 2009 judgment is a final, non-appealable, conclusive, and enforceable judgment.

VI.

<u>Count 1 – Enforcement of the Moroccan Court's Judgment</u>

66.     MPE and MFM incorporate the allegations above.

67.     Under Texas Civil Practice and Remedies Code § 36.004 (and other states' statutes codifying the Uniform Foreign Country Money-Judgment Recognition Act), a foreign country judgment that meets the requirements of the Act and that is not refused recognition under the Act is conclusive between the parties and is enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit.

68.     The Morocco Court's December 31, 2009 judgment was rendered after June 17, 1981 by a "foreign country" and is not a judgment for taxes, a fine, or matrimonial or familial support.  *See* Tex. Civ. Prac. & Rem. Code §36.001.  The judgment is final and conclusive and enforceable in Morocco where it was rendered.  *See id.* § 36.002(a)(1).  There is no appeal pending, and the judgment no longer is subject to appeal.  *Id.*

69.     The Morocco Court's judgment was rendered under a system that provides impartial tribunals and procedures compatible with the requirements of due process of law, the Morocco Court had personal jurisdiction over DeJoria, Gustin, and the other defendants in that case, and the Morocco Court had jurisdiction over the subject matter.  *See id.* § 36.005(a).

70.     DeJoria, Gustin, and the other defendants in the Morocco Court lawsuit received notice of the proceedings in sufficient time to defend, and were served with process in the

Morocco Court lawsuit in sufficient time to defend.  *See id.* § 36.005(b)(1).  They were served in the United States with formal process and notice of the Morocco Court lawsuit by May 2003, over 6 ½ years before the Morocco Court issued its judgment.

71.    The Morocco Court judgment was not obtained by fraud.  *See  id.* § 36.005(b)(2).

72.    The causes of action on which the Morocco Court judgment is based are consistent with, not repugnant to, the public policy of Texas and of the United States.  *See  id.* § 36.005(b)(3).

73.    The Morocco Court judgment does not conflict with another final and conclusive judgment, and is consistent with judgments rendered by United States federal courts.  *See id.* § 36.005(b)(4).

74.    The proceedings in the Morocco Court were consistent with, not contrary to, agreements between the parties under which the dispute was to be settled. *See  id.* § 36.005(b)(5).

75.    The Morocco Court's jurisdiction was based on much more than just personal service and, in any event, Morocco was a convenient and appropriate forum, and certainly was not a seriously inconvenient forum for the trial of the action.  *See id.* § 36.005(b)(6).

76.    There is no evidence that Morocco does not recognize judgments rendered in Texas.  *See id.* § 36.005(b)(7).

77.    The Morocco Court's judgment is entitled to recognition and enforcement under Chapter 36 of the Texas Civil Practice and Remedies Code, the Uniform Foreign Country Money-Judgment Recognition Act.

VII.

<u>Relief Sought</u>

78.    MPE and MFM respectfully request that this Court:

    a.  recognize and enforce the Morocco Court's December 31, 2009 judgment in accordance with Tex. Civ. Prac. & Rem. Code § 36.004,

    b.  grant judgment in favor of MPE and MFM, and against DeJoria and Gustin jointly and severally, in the U.S. dollar equivalent of 969,832,062.22 Dirhams, which is $122,945,610.50,

    c.  award MPE and MFM pre- and post-judgment interest at the maximum legal rate,

    d.  award MPE and MFM costs of court, and

    e.  award MPE and MFM such other and further relief to which they justly are entitled.

Dated:  August 12, 2013

Respectfully submitted,

*/s/ Geoffrey L. Harrison*
Geoffrey L. Harrison
Texas State Bar No. 00785947
gharrison@susmangodfrey.com
Kenneth E. McNeil
Texas State Bar No. 13830900
kmcneil@susmangodfrey.com
John P. Lahad (admission pending)
Texas State Bar No. 24068095
jlahad@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-6666

*Attorneys for Defendants/Counterclaim Plaintiffs*
*Maghreb Petroleum Exploration  S.A. and*
*Mideast Fund for Morocco Limited*

<u>Certificate of Service</u>

  I certify that on August 12, 2013 this document properly was served on the counsel of record via electronic filing in accordance with the U.S. District Court, Western District of Texas Procedures for Electronic Filing.


          <u>*/s/ Geoffrey L. Harrison*</u>
          Geoffrey L. Harrison