IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN PAUL DEJORIA | § | |
| | § | |
| Plaintiff/Counterclaim Defendant | § | Civil Action No: 1:13-cv-654-JRN |
| | § | |
| v. | § | |
| | § | |
| MAGHREB PETROLEUM EXPLORATION S.A. and MIDEAST FUND FOR MOROCCO LIMITED | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants/Counterclaim Plaintiffs | § | |

MPE's and MFM's Motion for Entry of Judgment

Table of Contents

I.    Procedural Posture ..................................................................................................1

II.   The Morocco Court Judgment Is Entitled to Full Faith and Credit .....................2

      A.    DeJoria Waived His Public Policy and Inconvenient Forum Challenges................3

      B.    DeJoria's Waived Public Policy and Inconvenient Forum Challenges
            Are Meritless...........................................................................................................3

III.  Conversion of Moroccan Dirhams to U.S. Dollars.................................................6

      A.    Texas Law Controls the Currency Conversion........................................................6

      B.    The "Breach Day" for Converting Dirhams to Dollars is
            December 31, 2009 When the Morocco Court Entered Its Judgment.....................8

      C.    The Principal Amount of This Court's Judgment Should Be
            $122,919,146.04....................................................................................................12

IV.   MPE/MFM Are Entitled to Pre- and Post-Judgment Interest...........................13

      A.    Texas Law Controls Prejudgment Interest.............................................................13

            1.    Prejudgment Interest Accrues at 5% Simple Interest from
                  August 12, 2013 .........................................................................................17

            2.    Interest Under Texas Law Preserves the Value of the Morocco
                  Court Judgment and Is Much Lower than Interest Under
                  Morocco Law ..............................................................................................18

      B.    MPE/MFM Are Entitled to Postjudgment Interest Under
            28 U.S.C. § 1961....................................................................................................19

V.    Conclusion .............................................................................................................20

Table of Authorities

Cases

*Al Haddad Bros. Enters., Inc. v. M/S AGAPI*,
    635 F. Supp. 205 (D. Del. 1986)................................................................................ 16

*Am. Int'l Trading Corp. v. Petroleos Mexicanos*,
    835 F.3d 536 (5th Cir. 1987) ..................................................................................... 14

*Boston Old Colony Ins. Co. v. Tiner Assoc. Inc.*,
    288 F.3d 222 (5th Cir. 2002) ................................................................................ 13, 19

*Budejovicky Budvar, N.P. v. Czech Beer Importers, Inc.*,
    2006 WL 1980308 (D. Conn. July 12, 2006) .................................................................. 19

*Burger King Europe Gmbh v. Groenke*,
    2015 WL 6751121 (N.D. Tex. Nov. 5, 2015)................................................................... 6, 9

*Competex, S.A. v. LaBow,*
    783 F.2d 333 (2nd Cir. 1986)....................................................................................... 10

*Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*,
    835 F.2d 541 (5th Cir. 1987) ....................................................................................... 13

*Continental Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
    932 F. Supp. 2d 153 (D.D.C. 2013) .......................................................................... passim

*Davis v. Twin City Fire Ins. Co.*,
    865 S.W.2d 231 (Tex. App.—Texarkana, 1993).............................................................. 14

*DeJoria v. Maghreb Petroleum Expl., S.A.*,
    804 F.3d 373 (5th Cir. 2015) .................................................................................. passim

*Dernick Res., Inc. v. Wilstein*,
    2015 WL 3981772 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet. h.).............. 14

*El Universal Compania Periodistica Nacional, S.A. de C.V. v. Phoenician Imports, Inc.*,
    802 S.W.2d 799 (Tex. App.—Corpus Christi 1990, writ denied) ............................. 6, 7, 8

*Frontera Transp. Co. v. Abaunza*,
    271 F. 199 (5th Cir. 1921) ............................................................................................ 6

*Fuchs v. Lifetime Doors, Inc.*,
    939 F.2d 1275 (5th Cir. 1991) ..................................................................................... 19

*G.E. Transp. S.P.A. v. Republic of Albania*,
    693 F. Supp. 2d 132 (D.D.C. 2010)............................................................................... 8

*Glaverbel Societe Anonyme v. Northlake Mkt. & Supply Inc.*,
　　1998 WL 750351 (N.D. Ind. Mar. 31, 1998) ................................................................ 15

*Guang Dong Light Headgear Factory Co., Ltd. v. ACI Int'l, Inc.*,
　　2008 WL 1924948 (D. Kansas Apr. 28, 2008) ............................................................. 16

*Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*,
　　401 S.W.3d 712 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ................................ 14

*In re Naille Plastics Family Ltd. P'Ship*,
　　406 S.W.3d 168 (Tex. 2013) ........................................................................................ 14

*Indag, S.A. v. Irridelco, Corp.*,
　　658 F. Supp. 763 (S.D.N.Y. 1987) ................................................................................. 8

*Ingersoll Mill. Mach. Co. v. Granger*,
　　833 F.2d 680 (7th Cir. 1987) ....................................................................................... 15

*Jamaica Nutrition Holdings, Ltd. v. United Shipping Co., Ltd.*,
　　643 F.2d 376 (5th Cir. 1981) ..................................................................................... 6, 8

*Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*,
　　962 S.W.2d 507 (Tex. 1998) ................................................................................... 13, 17

*Meaux Surface Prot., Inc. v. Fogleman*,
　　607 F.3d 161 (5th Cir. 2010) .................................................................................. 13, 19

*Mezu v. Progress Bank of Nigeria, PLC*,
　　2013 WL 6531626 (D. Md. Dec. 11, 2013) .............................................................. 15, 19

*Reyelts v. Cross*,
　　968 F. Supp. 2d 835 (N.D. Tex. 2013) ......................................................................... 20

*Rio Grande Land & Cattle Co. v. Light*,
　　758 S.W.2d 747 (Tex. 1988) ........................................................................................ 13

*S.A.R.L. Aquatonic - Laboratoires PBE v. Marie Katelle, Inc.*,
　　2007 WL 2410373 (D. Ariz. Aug. 21, 2007) .................................................................. 8

*Salem v. Asi*,
　　2011 WL 2119640 (Tex. App.—Fort Worth May 26, 2011, no pet. h.) .......................... 13

*Sarhank Group v. Oracle Corp.*,
　　2004 WL 324881 (S.D.N.Y. Feb. 19, 2004) ................................................................. 16

*Sembawang Shipward, Ltd. v. Charger, Inc.*,
　　955 F.2d 983 (5th Cir. 1992) ....................................................................................... 11

*Skidmore Energy, Inc.v. KPMG, et al.,*
    455 F.3d 564 (5th Cir. 2006) ........................................................................................ 4

*Society of Lloyd's v. Reinhart*,
    402 F.3d 982 (10th Cir. 2005) .................................................................................... 15

*Tricon Energy Ltd. v. Vinmar Int'l., Ltd.*,
    718 F.3d 448 (5th Cir. 2013) ...................................................................................... 19

*United States v. Whitfield*,
    590 F.3d 325 (5th Cir. 2009) ........................................................................................ 3

*Waterside Ocean Navigation Co., Inc. v. Int'l Navigation Ltd.*,
    737 F.2d 150 (2nd Cir. 1984).................................................................................... 16

*Wheelbarger v. Landing Council of Co-Owners*,
    2015 WL 4591962 (Tex. App.—Houston [1st Dist.] July 30, 2015, no pet.) .................. 18

Statutes

28 U.S.C. § 1961.................................................................................................... 13, 18, 19

Tex. Civ. Prac. & Rem. Code § 36.005 ....................................................................... 2, 4

Tex. Fin. Code § 304.003........................................................................................... 17

Tex. Fin. Code § 304.104........................................................................................... 18

Other Authorities

Interest Rates, Texas Office of Consumer Credit Commissioner,
    http://occc.texas.gov/publications/interest-rates ........................................................ 17

Reporting Rates of Exchange, Bureau of Fiscal Service,
    Department of the Treasury (Dec. 31, 2009) .............................................................. 12

Restatement (Third) of Foreign Relations Law §823 (1987)...................................... 6, 7

Selected Interest Rates (Weekly),
    Board of Governors of the Federal Reserve System (December 7, 2015)........................ 17

USFOREX.com, Historical Exchange Rates, US Dollar to Moroccan Dirham,
    http://www.usforex.com/forex-tools/historical-rate-tools/historical-exchange-rates ....... 12

XE.com, XE Currency Table: USD, Mid-market rates as of 2009-12-31 17:00 UTC,
    http://www.xe.com/currencytables/?from=USD&date=2009-12-31................................ 12

Table of Exhibits

| Exhibit | Description |
|---------|-------------|
| 1 | DeJoria's October 28, 2015 Fifth Circuit Petition for Panel Rehearing |
| 2 | XE.com, XE Currency Table: USD, Mid-market rates as of 2009-12-31 17:00 UTC, http://www.xe.com/currencytables/?from=USD&date=2009-12-31 |
| 3 | Historical Exchange Rate Search Results, USFOREX.com, Historical Exchange Rates, http://www.usforex.com/forex-tools/historical-rate-tools/historical-exchange-rates |
| 4 | Bureau of Fiscal Service of the Department of the Treasury, Treasury Reporting Rates of Exchange, Current and Historical rates |
| 5 | Interest Rates, Texas Office of Consumer Credit Commissioner |
| 6 | Selected Interest Rates (Weekly),  Board of Governors of the Federal Reserve System |
| 7 | December 11, 2015 Declaration of Abed Awad, Esq. |
| 8 | December 14, 2015 Declaration of John P. Lahad, Esq. |

Maghreb Petroleum Exploration S.A. ("MPE") and Mideast Fund for Morocco Limited ("MFM") respectfully ask this Court to enter judgment in their favor recognizing and enforcing the December 31, 2009 Morocco Court judgment against John Paul DeJoria ("DeJoria").

I.
Procedural Posture

On December 31, 2009, the Morocco Court awarded MPE and MFM a judgment of 969,832,062.22 Moroccan Dirhams against DeJoria and his business partner Michael Gustin.

On March 14, 2013, MPE/MFM served DeJoria in person in Austin, Texas with a copy of the Morocco Court's December 31, 2009 judgment. (Doc. 37-17). On August 12, 2013, MPE/MFM filed their Counterclaim against DeJoria to "recognize and enforce the Morocco Court's December 31, 2009 judgment," and seeking "pre- and post-judgment interest at the maximum legal rate." (Doc. 6). On August 13, 2014, this Court granted DeJoria's motion for non-recognition. (Doc. 57). MPE/MFM appealed.

On September 30, 2015, the U.S. Court of Appeals for the Fifth Circuit held that DeJoria did "not meet his burden under the Act," rejected DeJoria's due process and personal jurisdiction and reciprocity arguments, held that DeJoria waived his public policy and inconvenient forum arguments, and ordered that "the judgment of the district court is REVERSED and this matter is REMANDED for further proceedings consistent with this opinion." (Doc. 63-1); *DeJoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 380 (5th Cir. 2015).

On October 28, 2015, DeJoria petitioned for panel rehearing and rehearing en banc. On November 16, 2015, the Fifth Circuit ruled that DeJoria's "Petition for Rehearing is DENIED and no member of this panel nor judge in regular service on the court having requested that the court be polled on Rehearing En Banc, (FED R. APP. P. and 5TH CIR. R. 35) the Petition for Rehearing En Banc is also DENIED." (Doc. 63).

1

On November 24, 2015, the Clerk of the Fifth Circuit "issued as the mandate" the Fifth Circuit's Judgment in which the court "ordered and adjudged that the judgment of the District Court is reversed, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court." (Doc. 63).

On November 24, DeJoria filed in this Court a "motion for scheduling conference" and on page 3 said this Court "will need" to adjudicate his Tex. Civ. Prac. & Rem. Code § 36.005(b)(3) and (6) public policy and inconvenient forum arguments as well as MPE/MFM's request for interest and the dirhams-to-dollars exchange rate. (Doc. 64). DeJoria said he intends to file a petition for certiorari in the U.S. Supreme Court, *id.,* but he has not yet done so and this appears to be another of DeJoria's attempts to delay payment of the 2009 Morocco Court judgment.

On November 24, this Court ordered that "all pending and future dispositive motions are REFERRED to United States Magistrate Judge Andrew Austin for Report and Recommendation…." (Doc. 65). MPE/MFM respectfully ask this Court to enter final judgment in accordance with the Fifth Circuit's Opinion and Texas law.

## II.
### The Morocco Court Judgment Is Entitled to Full Faith and Credit

In its September 30, 2015 Opinion in *DeJoria v. Maghreb Petroleum Exploration, S.A.*, 804 F.3d 373, 380 (5th Cir. 2015), the Fifth Circuit explained that, under the Texas Recognition Act, "unless a ground for non-recognition applies, the judgment of a foreign country is 'conclusive between the parties' and 'enforceable in the same manner as a judgment of a sister state that is entitled to full faith and credit." The Fifth Circuit rejected DeJoria's three main arguments (due process, reciprocity, personal jurisdiction), *id.* at 382, 385, 389, and held that DeJoria "waived" his other two arguments (public policy, inconvenient forum), *id.* at 384 n.12.

2

A.    DeJoria Waived His Public Policy and Inconvenient Forum Challenges

In his motion for status conference, DeJoria admits that the Fifth Circuit rejected his three main challenges regarding due process, reciprocity, and personal jurisdiction (Doc. 64 at 3), and the Fifth Circuit clearly did reject them. *DeJoria,* 804 F.3d at 382, 385, 389. Yet, DeJoria asks this Court to "adjudicate" his public policy and inconvenient forum challenges because, DeJoria falsely says, they "were not decided by the Fifth Circuit." (Doc. 64 at 3). The Fifth Circuit *did* decide, and expressly held that DeJoria "waived" his challenges:

> In the district court, DeJoria raised "public policy" and "inconvenient forum" challenges to recognition of the Moroccan judgment, both of which are discretionary grounds for non-recognition under Section 36.005(b) of the Texas Recognition Act. These arguments were not raised on appeal and are thus waived.

804 F.3d at 384 n.12 (citing *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009)).

DeJoria *knows* that the Fifth Circuit's waiver ruling precludes him from trying to re-raise his public policy and inconvenient forum challenges here. In his October 28, 2015 petition for panel rehearing, DeJoria urged the panel to "clarify its opinion by deleting footnote 12 and specifying that DeJoria may pursue his public policy and inconvenient forum arguments on remand" and "pray[ed] that the portion of the Panel opinion stating that he "waived" his inconvenient forum and public policy challenges to the Moroccan judgment be vacated *so that he may pursue these challenges before the district court*." X-1 at 14-15 (emphasis added). The Fifth Circuit denied DeJoria's petition for panel rehearing (Doc. 63) and, by DeJoria's own admission, he is barred from pursuing these challenges.

B.    DeJoria's Waived Public Policy and Inconvenient Forum Challenges Are Meritless

This Court should honor the Fifth Circuit's waiver ruling.  That is the law of the case, and this Court should not indulge DeJoria's invitation to contravene the Fifth Circuit's Opinion by considering his waived public policy and inconvenient forum challenges. These challenges are

3

meritless anyway, and MPE/MFM years ago debunked them both in their October 31, 2013 response brief (Doc. 37 at 52-59). In reply, DeJoria said…nothing. DeJoria abandoned these challenges in his reply brief – he did not even mention them. (Doc. 42).

The public policy inquiry under Texas Recognition Act § 36.005(b)(3) is whether the "cause of action on which the judgment is based is repugnant to the public policy of this state." MPE/MFM's causes of action are not repugnant to Texas public policy; they are common and well-established causes of action in Texas. The Fifth Circuit has said as much. Twice.

First, in *Skidmore Energy, Inc. v. KPMG, et al.,* 455 F.3d 564, 566 (5th Cir. 2006), the Fifth Circuit affirmed the district court's dismissal of DeJoria's company Skidmore's "$3 billion" lawsuit against MPE, MFM, and others, and affirmed the court's $530,000 in sanctions against Skidmore and its lawyer for filing "wholly frivolous" claims. The Fifth Circuit discussed MPE/MFM's then-pending Morocco Court lawsuit and described MPE/MFM's causes of action as "alleged breach of contract, fraud, and mismanagement of the venture in which they were involved…." *Id*.

Second, in its September 30, 2015 Opinion, the Fifth Circuit described MPE/MFM's causes of action in their Morocco lawsuit this way: "MFM alleges that DeJoria made fraudulent misrepresentations regarding his investment in Lone Star, and MPE alleges that DeJoria's misrepresentations deprived it of necessary capital." *DeJoria,* 804 F.3d at 388.  MPE/MFM's causes of action for "misrepresentation," "breach of contract, fraud, and mismanagement" are not repugnant to Texas public policy; they are common and well-established claims in Texas.

The inconvenient forum inquiry under § 36.005(b)(6) is whether, "in the case of jurisdiction based *only* on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action." (Emphasis added). The Morocco Court's

4

jurisdiction over DeJoria was *not* based "only on personal service," thus (b)(6) does not apply at all. In its Opinion, the Fifth Circuit explained that DeJoria's multiple "sufficient, purposeful" contacts with Morocco gave rise to jurisdiction in Morocco:

> DeJoria voluntarily started a Moroccan corporation to explore for oil reserves in Morocco through Lone Star. DeJoria's investment activity was in Morocco. DeJoria visited Morocco in connection with his relationship with Lone Star, including a visit to a drilling site with Morocco's then-Energy Minister. Nearly all of the alleged acts and omissions in the underlying case occurred in Morocco. DeJoria thus has sufficient, purposeful contacts with Morocco to render jurisdiction reasonable.

*DeJoria*, 804 F.3d at 388. The Fifth Circuit addressed the convenience and propriety of Morocco as a forum, and found the burden on DeJoria was not unfair.

> While litigation in Morocco would have imposed a burden on DeJoria, that burden would not have been so heavy as to render jurisdiction unreasonable. Moroccan courts do not require that the defendant appear personally, and DeJoria could have litigated entirely through counsel without returning to Morocco. When weighed against Morocco's substantial interest in adjudicating a dispute involving a Moroccan corporation and Moroccan resources, DeJoria's burden of litigating in Morocco would not have been unfair in relation to his contacts with the forum.

*Id.* at 389.

DeJoria also expressly and in writing agreed to submit to the personal jurisdiction of the Morocco courts in 1999 when he signed the Articles of Association of Lone Star Energy Corporation and agreed that "Any disputes that may arise during the course of the Company or its liquidation, either between the shareholders and the Company, or between shareholders themselves, concerning social affairs, interpretation or implementation of the present Articles of Association, are referred to the competent courts where the registered office is located" in Rabat, Morocco. (Doc. 37-10 at 17).

Years before the Fifth Circuit held that DeJoria waived his public policy and inconvenient forum challenges, MPE/MFM fully briefed the issues and established that

5

DeJoria's challenges were meritless. *See* Doc. 37 at 52-59 (MPE/MFM Response); Doc. 43 at 16 n.10 (MPE/MFM Sur-Reply). DeJoria did not reply.

DeJoria has the burden of proof, and his challenges are meritless even if he could re-assert them, which he cannot. The Fifth Circuit held that DeJoria waived his challenges, and DeJoria admitted in his petition for panel rehearing that he could not "pursue these challenges before the district court" unless the Fifth Circuit vacated its footnote 12 on waiver. The Fifth Circuit denied DeJoria's request. DeJoria's waiver is the law of the case.

III.
Conversion of Moroccan Dirhams to U.S. Dollars

In *Jamaica Nutrition Holdings, Ltd. v. United Shipping Co., Ltd.,* 643 F.2d 376, 379 n.5 (5th Cir. 1981), the Fifth Circuit noted that "A money judgment entered by an American court must be in United States currency." (Citing *Frontera Transp. Co. v. Abaunza,* 271 F. 199, 202 (5th Cir. 1921)). In his motion for status conference, DeJoria acknowledges that "any award will need to be reduced to a judgment" after briefing on "the appropriate *dirhams*-to-dollars exchange rate to apply in converting the judgment to U.S. dollars. (Doc. 64 at 3).

A.     Texas Law Controls the Currency Conversion

Texas law determines the date for converting foreign currency into U.S. dollars. "In a diversity action, the proper date for the conversion of the foreign currency debt or contract damages is a question of state law." *Burger King Europe Gmbh v. Groenke*, 2015 WL 6751121, at *10 (N.D. Tex. Nov. 5, 2015) (Fish, J.); *see also* Restatement (Third) of Foreign Relations Law §823 cmt. a (1987) ("When obligations in foreign currency arise in State courts or in federal courts exercising diversity jurisdiction, the rules for conversion have depended on State law.").

The leading Texas state court case on currency conversion is *El Universal Compania Periodistica Nacional, S.A. de C.V. v. Phoenician Imports, Inc.*, 802 S.W.2d 799 (Tex. App.—

6

Corpus Christi 1990, writ denied), a breach of contract case filed in Texas state court, not a Texas Recognition Act case. The currency conversion issue arose because the parties' contract for publishing advertisements called for payment in Mexican pesos. *Id.* at 800. The court considered "what date should be used for applying a rate of exchange for converting a foreign currency debt into United States dollars." *Id.* The court followed the "breach day" rule and converted Mexican pesos to U.S. dollars on the date of breach – which, in the context of that breach of contract case, was the date the contract at issue was breached – rather than the "judgment day" of when the Texas court entered judgment. *Id.* at 802-804.

In *Phoenician Imports,* the Texas court of appeals also addressed what happens when, as here, the foreign currency has depreciated from the "breach date" (date of the Morocco Court judgment) to the "judgment date" (date of this U.S. Court's judgment):

> The objective of civil money judgments is, in general, to place the judgment creditor (*i.e.*, the injured party) in a position as close as possible to that in which he would have been if the obligation had been carried out by the judgment debtor or if the injury had not occurred. Restatement of Foreign Relations Law of United States § 823 comment c (1986). While the preference of the judgment creditor is to be taken into account, the decision is to be made by the court, which should assure that neither party receives a windfall or is penalized as a result of the currency conversion. *Id.* In general, *if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of the injury or breach*; if the foreign currency has appreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of judgment or date of payment. *Id.*

*Id.* at 803.

The *Phoenician Imports* court explained the "unfairness" of putting the currency fluctuation risk on the judgment creditor, and explained that judgment debtors (like DeJoria), not judgment creditors (like MPE/MFM), bear the risk of currency fluctuation by delaying payment after the amount of the foreign country debt is fixed (here, six years after):

> In the instant case, the unfairness of the trial court's ruling can be demonstrated by showing the value of the loss on the date of breach, $27,155.01, and the value of the loss on the date of the judgment, $5,114.03. El Universal should not have to bear this loss as a

result of Phoenician's delay in payment. Accordingly, we hold that the trial court erred in entering judgment at the rate of currency exchange which was in effect as of the date of the judgment.

*Id.* at 803-804. The court applied the "breach day" currency conversion rule even though it imposed over *five times* greater liability in U.S. dollars on the judgment debtor than the "judgment day" rule.

B.      The "Breach Day" for Converting Dirhams to Dollars is December 31, 2009 When the Morocco Court Entered Its Judgment

In *Phoenician Imports,* the "breach day" was the day of contract breach when "the debt was due and owing," and the "judgment day" was the day of the Texas trial court's judgment. *Id.* at 800, 804. Here, the "breach day" is December 31, 2009 when the Morocco Court entered its judgment against DeJoria – MPE/MFM had to litigate in Morocco to establish the existence and amount of DeJoria's debt. The "judgment day" will be the day this Court enters its judgment.

In foreign country money judgment enforcement cases like this one, the "breach day" is the date of the foreign court's judgment, and the "judgment date" is the date the U.S. court enters its judgment enforcing the foreign judgment. *See, e.g., Continental Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 160 (D.D.C. 2013) (date of foreign judgment is the "breach date" in action to enforce the judgment); *G.E. Transp. S.P.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 140 (D.D.C. 2010) (date of foreign arbitral award is the "breach date" in action to enforce the award); *S.A.R.L. Aquatonic - Laboratoires PBE v. Marie Katelle, Inc.*, 2007 WL 2410373, at *2 (D. Ariz. Aug. 21, 2007) (same re French court's judgment); *Indag, S.A. v. Irridelco, Corp.*, 658 F. Supp. 763, 765-766 (S.D.N.Y. 1987) (using "conversion rate prevailing on the date of the foreign judgment").

In *Jamaica Nutrition Holdings, Ltd. v. United Shipping Co., Ltd.,* 643 F.2d 376, 379 n.5 (5th Cir. 1981), the Fifth Circuit applied the "breach day" rule, and held that the foreign currency

8

debt in Jamaican dollars should be converted "at a date earlier than the [U.S.] judgment." The Fifth Circuit explained that "We see no reason to place the risk of devaluation on (or to grant the possibility of profit by appreciation to) the injured party."

In *Burger King Europe Gmbh v. Groenke*, 2015 WL 6751121, at *10 (N.D. Tex. Nov. 5, 2015 (Fish, J.), the defendant owed "€478.217,37 for amounts past due under the guaranty. This amount must be converted to dollars." The court noted that Texas law determined "the proper date for the conversion of foreign currency debt" and found that "Texas law is clear on this issue." *Id.* The court cited *Phoenician Imports* and explained:

> Texas courts are given the discretion to convert foreign judgments based on the rate of exchange applicable on either the date of judgment or date of the breach.
>
> Under the approach utilized in *Phoenician Imports,* if the foreign currency has depreciated in value since the time of breach, then the date of the breach sets the applicable rate of exchange. If, however, the foreign currency appreciates after the breach, then the judgment date sets the applicable rate of exchange. The court reasoned that "these principles should be followed to ensure the only just result: placing the injured party in the position in which he would be had the loss not occurred." The court concluded that since plaintiff "should not have to bear this loss as a result of [the defendant's] delay in payment," the rate of currency exchange at the time of the breach should have been used.
> …
> Here, because this is a diversity case, the court applies state law to determine the conversion date. Further, the court concludes that there has been a significant decline in the euro's value since the date of Groenke's breach….Therefore, the court converts the damages from euros to dollars using the exchange rate as of the day of breach.

*Id.* at *11 (citations omitted). DeJoria is the guilty judgment debtor who, for six years and counting, has avoided paying what he owes under the Morocco Court's judgment. DeJoria, not injured parties MPE/MFM, bears the currency fluctuation risk.

The Moroccan dirham has depreciated *from* the December 31, 2009 "breach day" when the Morocco Court's judgment established and quantified DeJoria's debt *through* today and likely through the as yet undetermined "judgment day" when this Court enters its judgment.

9

Under Texas law, this Court should apply the "breach day" rule and convert Moroccan dirhams to U.S. dollars as of December 31, 2009.

In *Competex, S.A. v. LaBow,* 783 F.2d 333, 336 (2nd Cir. 1986), the Second Circuit applied New York's "breach day" rule – like Texas's "breach day" rule – and explained that currency conversion is per "the conversion rate prevailing on the date the English judgment debt became due. The asserted purpose of this rule is to assure that plaintiff will be made whole by protecting him against fluctuation in relative currency values."

In *Continental Transfert Technique Limited v. Federal Government of Nigeria*, 932 F. Supp. 2d 153, 156 (D.D.C. 2013), the court enforced a $250 million U.K. court judgment under D.C.'s Uniform Foreign Country Money-Judgment Recognition Act and also enforced the underlying U.K. arbitration award under the Federal Arbitration Act. The court addressed the question of "what exchange rates to use in converting the naira and pound into dollars." *Id*. at 158. Continental noted that the Nigerian naira and British pound had depreciated since the date of the U.K. arbitral award (the "breach day" in the context of enforcement actions), and urged the U.S. court to apply the "breach day" rule and convert currency as of the date of the foreign award. *Id*. at 159-160. Nigeria urged the "judgment day" rule under which the amount of the U.K. award and U.K. judgment would be converted to U.S. dollars "almost three years later" on the date the U.S. court entered its judgment enforcing the foreign award. *Id*.

The *Continental* court explained that where judgment creditors (like Continental; like MPE/MFM) seek to enforce a foreign court money judgment against judgment debtors (like Nigeria; like DeJoria), "the breach date here would be August 14, 2008, the date of Continental's arbitral award." *Id.* at 159. (The "breach day" here is December 31, 2009, the date of the Morocco Court's judgment.). The court noted that a lawsuit to enforce a foreign award "is not an

10

action in which a plaintiff has come to a United States court to adjudicate rights arising under foreign law. Rather, this action arises under the Federal Arbitration Act and the Uniform Foreign–Money Judgment Recognition Act." *Id.*

> While the original dispute between Continental and Nigeria may have involved questions of Nigerian law—which their contract specified would govern any disputes that were referred to arbitration—*Continental's right of action here derives entirely from U.S. law, namely the right to have an arbitral award that meets certain criteria be confirmed by a United States district court*….Therefore, regardless of the circumstances that led Continental and Nigeria to submit to arbitration initially, Continental's cause of action in this Court arises exclusively under United States law; the "breach day" rule therefore applies.

*Id.* (emphasis added). Here, MPE/MFM's cause of action *in this U.S. Court* arises exclusively under Texas law, the Texas Recognition Act, meaning the "breach day" rule applies and dictates converting dirhams to dollars as of the date of the Morocco Court's judgment.[1]

The *Continental* court explained that by applying the "breach day" in U.S. foreign money judgment enforcement lawsuits, "Continental simply will receive a judgment that reflects the true value in dollars of the arbitral award at the time it issued, instead of one whose value has eroded as a result of Nigeria's success in delaying its confirmation." *Id.* at 161.

The Court should follow Texas law (and federal law) and convert Moroccan dirhams to U.S. dollars based on the U.S. Treasury's official exchange rate in effect on December 31, 2009, the "breach day" when the Morocco Court entered its judgment.

---

[1] In the admiralty case of *Sembawang Shipward, Ltd. v. Charger, Inc.*, 955 F.2d 983, 986 (5th Cir. 1992), the court applied the judgment day rule rather than the breach day rule because the claims at issue were governed by foreign law: "The obligation in the case at bar is governed by the laws of Singapore and is fixed in Singapore dollars. The judgment-date rule is not changed 'by the fact that the creditor happens to be able to catch his debtor here.'" (Citation omitted). That was not a foreign country judgment recognition case. In material contrast, MPE/MFM's claims in this Court arise solely under Texas law, the Texas Recognition Act. *See* Doc. 6 at 1 ("Counterclaim plaintiffs bring this counterclaim and third-party complaint pursuant to Chapter 36 of the Texas Civil Practice and Remedies Code."). MPE/MFM have not asserted any claims under Morocco law in this case, and they did not "happen[] to be able to catch" DeJoria here. MPE/MFM sued DeJoria here in the district where he resides.

11

C.       The Principal Amount of This Court's Judgment Should Be $122,919,146.04

Under the controlling Texas law (and under federal law as well), the correct exchange rate for converting Moroccan dirhams to U.S. dollars is the "breach day" rule and exchange rate applicable on December 31, 2009 when the Morocco Court entered its judgment.

The exchange rate for converting Moroccan dirhams to U.S. dollars on December 31, 2009 was 7.89 dirhams per dollar. *See* X-2 (XE.com, XE Currency Table: USD, Mid-market rates as of 2009-12-31 17:00 UTC, http://www.xe.com/currencytables/?from=USD&date=2009-12-31 (last visited December 14, 2015)); *see also* X-3 (USFOREX.com, Historical Exchange Rates, US Dollar to Moroccan Dirham, http://www.usforex.com/forex-tools/historical-rate-tools/historical-exchange-rates (last visited December 14, 2015"1 Unit of US Dollar (USD)" and "X units of Moroccan Dirham (MAD)" using an "Exact" date range of "31 Dec 2009" to "1 Jan 2010").[2]

The currency exchange rate calculation is: 969,832,062.22 dirhams / 7.89 dirhams per dollar = $122,919,146.04. The principal amount of this Court's judgment should be $122,919,146.04.

---

[2] The December 31, 2009 exchange rate provided by these websites is within two-*hundredths* of the exchange rate relied on by the U.S. government during a similar time period. The U.S. Department of the Treasury provides a quarterly report stating exchange rates "at which the U.S. government can acquire foreign currencies for official expenditures." Treasury Reporting Rates of Exchange, Bureau of Fiscal Service, Department of the Treasury, https://www.fiscal.treasury.gov/fsreports/rpt/treasRptRateExch/treasRptRateExch_home.htm. The quarterly reports reflect the rates "as reported by disbursing officers for each post on the last business day of the month prior to the date of the published report." *Id*. The Treasury maintains a historical archive of these quarterly reports at https://www.fiscal.treasury.gov/fsreports/rpt/treasRptRateExch/historicalRates.htm. According to the Treasury's archived December 31, 2009 report, the official exchange rate for government agencies to use in converting Moroccan dirhams to U.S. dollars in this time period was 7.903 dirhams per dollar. *See* X-4 (Quarterly Report, Reporting Rates of Exchange, Bureau of Fiscal Service, Department of the Treasury (December 31, 2009)), *available at* https://www.fiscal.treasury.gov/fsreports/rpt/treasRptRateExch/1209.pdf. Under this exchange rate of 7.903, the principal amount of this Court's judgment would be $122,716,950.81.

IV.

MPE/MFM Are Entitled to Pre- and Post-Judgment Interest

In their August 12, 2013 Counterclaim, MPE/MFM alleged a single cause of action for "Enforcement of the Moroccan Court's Judgment" under the Texas Recognition Act and asked this Court to "award MPE and MFM pre- and post-judgment interest at the maximum legal rate." (Doc. 6 at ¶¶ 66-77 and 78.c.). MPE/MFM are entitled to prejudgment interest under Texas law, and postjudgment interest under 28 U.S.C. § 1961.

A.      Texas Law Controls Prejudgment Interest

In *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010), the Fifth Circuit confirmed that "State law governs the award of prejudgment interest in diversity cases." In *Boston Old Colony Insurance Co. v. Tiner Associates Inc*., 288 F.3d 222, 234 (5th Cir. 2002), the Fifth Circuit noted that "in diversity cases, postjudgment interest is calculated at the federal rate, while prejudgment interest is calculated under state law."

In *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc*., 962 S.W.2d 507, 528 (Tex. 1998), the Texas Supreme Court explained that prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between accrual of the claim and the date of the judgment." Under Texas law, "there are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Id*. In Texas, "prejudgment interest may be awarded on equity principles, regardless of whether the cause of action sounds in equity." *Salem v. Asi*, 2011 WL 2119640, at *6 (Tex. App.—Fort Worth May 26, 2011, no pet. h.) (citing *Rio Grande Land & Cattle Co. v. Light*, 758 S.W.2d 747, 748 (Tex. 1988)); *see also Johnson & Higgins*, 962 S.W.2d at 528.

In *Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc.*, 835 F.2d 541, 549 (5th Cir. 1987), the Fifth Circuit described Texas law "as creating a regime in which equitable

13

prejudgment interest is awarded *as a matter of course* when the trier of facts finds that damages accrued before the time of judgment." (Emphasis added). In *American International Trading Corp. v. Petroleos Mexicanos*, 835 F.3d 536, 541 (5th Cir. 1987), the Fifth Circuit noted that, under Texas law, prejudgment interest should be granted to a prevailing plaintiff "in all but exceptional circumstances."

In *In re Naille Plastics Family Limited Partnership*, 406 S.W.3d 168, 173 (Tex. 2013), the Texas Supreme Court noted that, "Like attorney's fees, court costs make a claimant whole, as does prejudgment interest." In *Dernick Resources, Inc. v. Wilstein*, 2015 WL 3981772, at *14 (Tex. App.—Houston [1st Dist.] June 30, 2015, no pet. h.), the court affirmed an award of prejudgment interest because "Dernick ought not to benefit from its protracted litigation and delayed forfeiture of its wrongly-acquired fees." In *Davis v. Twin City Fire Insurance Co.*, 865 S.W.2d 231, 237 (Tex. App.—Texarkana, 1993) *aff'd as modified in part*, 904 S.W.2d 663 (Tex. 1995), the court reversed the trial court's refusal to award prejudgment interest because "a prevailing plaintiff should be compensated for the defendant's having the beneficial use of damage funds between the time of the injury and the date of the judgment."

In *Hand & Wrist Center of Houston, P.A. v. Republic Services, Inc.*, 401 S.W.3d 712, 722 (Tex. App.—Houston [14th Dist.] 2013, no pet.), the court reversed the trial court's denial of prejudgment interest and described the equitable considerations that mandate awarding prejudgment interest:

> Awarding appellants interest on Republic's partial payments is consistent with the policy goals of equitable prejudgment interest that have been recognized by the Texas Supreme Court. By allowing recovery of prejudgment interest on the full amount of damages resulting from Republic's breach of contract, whether included in the judgment or admitted by Republic in the form of pretrial payments, we are adhering to the long-held notion that prejudgment interest is compensation for the lost use of money due as damages. For nearly a year and a half, appellants lost the use of the amounts that

14

Republic belatedly paid them. Awarding interest on those amounts makes appellants whole; it results in neither a windfall to appellants nor a penalty to Republic.

Conversely, if we did not allow an award of prejudgment interest on the total amount of damages established as a result of the breach, we would be encouraging gamesmanship, expense, and delay: defendants would have free use of the money claimed as damages and could wait until the last possible moment before trial to settle or tender the amount they believe is owed.

(Internal citations omitted).

The Morocco Court entered its judgment against DeJoria on December 31, 2009, and DeJoria has enjoyed an interest-free loan ever since. After MPE/MFM served DeJoria with a certified copy of the Morocco Court judgment on March 14, 2013, DeJoria refused to pay, initiated this lawsuit to try to avoid paying, and continues to take steps to try to delay payment. Without prejudgment interest, MPE/MFM will not be made whole, and DeJoria will be rewarded for his delay and gamesmanship.

In *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005), the court enforced a U.K. court judgment, awarded prejudgment interest under federal law, and explained that awarding prejudgment interest in the U.S. judgment enforcing the foreign judgment "preserves the value of the award as originally decided, affording neither party a benefit." *See also Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 691 (7th Cir. 1987) (affirming award of prejudgment interest on judgment recognizing Belgian money judgment); *Mezu v. Progress Bank of Nigeria, PLC*, 2013 WL 6531626, at * 2 (D. Md. Dec. 11, 2013) (awarding prejudgment interest of 6% on judgment recognizing Nigerian money judgment); *Glaverbel Societe Anonyme v. Northlake Mkt. & Supply Inc.*, 1998 WL 750351, at *10-11 (N.D. Ind. Mar. 31, 1998) (awarding prejudgment interest on Belgian patent infringement judgment).

Federal courts have employed similar equitable reasoning and added prejudgment interest to foreign arbitral awards, which is informative because the New York Convention on the

15

Recognition and Enforcement of Foreign Arbitral Awards (like the Uniform and Texas Recognition Acts) does not specifically address prejudgment interest. In *Waterside Ocean Navigation Co., Inc. v. International Navigation Ltd.*, 737 F.2d 150, 153-154 (2nd Cir. 1984), the Second Circuit affirmed recognition of five U.K. arbitral awards, but reversed the district court's refusal to award post-award/prejudgment interest for the same sort of equitable considerations that Texas courts have applied:

> Absent persuasive reasons to the contrary, we do not see why pre-judgment interest should not be available in actions brought under the Convention.…In these days in which all of us feel the effects of inflation, it is almost unnecessary to reiterate that only if such interest is awarded will a person wrongfully deprived of his money be made whole for the loss.

The Second Circuit added that "in opposing the grant of post-award, pre-judgment interest, INL does not present any reasons, let alone persuasive reasons that would overcome *our presumption in favor of pre-judgment interest*." *Id.* at 154 (Emphasis added).

In *Continental Transfert*, the court awarded prejudgment interest from the date of the award, saying that "without a presumption in favor of such interest, the losing party in the arbitration has an incentive to withhold payment." 932 F. Supp. 2d at 164. In *Guang Dong Light Headgear Factory Co., Ltd. v. ACI International, Inc.*, 2008 WL 1924948, at *3 (D. Kansas Apr. 28, 2008), the court found that the equities favored granting prejudgment interest because the defendant ACI "refused to recognize the arbitration award, requiring Guang Dong to seek enforcement in this Court. The Court declines to reward ACI for this delay by denying an award of prejudgment interest." In *Sarhank Group v. Oracle Corp.*, 2004 WL 324881, at * 2 (S.D.N.Y. Feb. 19, 2004), the court granted prejudgment interest on an Egyptian arbitral award, finding that "the purpose of the Convention would be impeded were Respondent able to receive an interest-free loan by delaying payment of the award, particularly by engaging in protracted litigation." In *Al Haddad Bros. Enterprises, Inc. v. M/S AGAPI*, 635 F. Supp. 205, 210 (D. Del. 1986), the

16

court granted prejudgment interest on an English arbitral award "in order to make Daikan whole for the wrongful deprivation of money since 1983."

               1.       <u>Prejudgment Interest Accrues at 5% Simple Interest from August 12, 2013</u>

In *Johnson & Higgins*, 962 S.W.2d at 531, the Texas Supreme Court held that "under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." The court added that "prejudgment interest accrues at the rate for postjudgment interest and it shall be computed as simple interest." *Id.* at 532. Simple interest is computed by multiplying the principal amount by the interest rate from the time of accrual through the date of the U.S. court's judgment.

The <u>principal</u> is the amount of the Morocco Court judgment converted to U.S. dollars, which in this case is <u>$122,919,146.04</u>.

The <u>interest rate</u> for prejudgment interest under Texas law is the same as the rate for postjudgment interest. *Johnson & Higgins*, 962 S.W.2d at 532.  Under § 304.003(c) of the Texas Finance Code, "The postjudgment interest rate is:…(2) five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System described by Subdivision (1) is less than five percent…." According to the State of Texas Office of Consumer Credit Commissioner, the December 2015 judgment rate is <u>5%</u>. X-5 (Interest Rates, Texas Office of Consumer Credit Commissioner, *available at* http://occc.texas.gov/publications/interest-rates (last visited December 13, 2015)); *see also* X-6 (Selected Interest Rates (Weekly), Board of Governors of the Federal Reserve System (December 7, 2015), *available at* http://www.federalreserve.gov/releases/h15/current/ (showing prime rate at 3.25%)).

The <u>time of accrual</u> from which prejudgment interest runs is "the earlier of (1) 180 days after the date a defendant receives written notice of a claim or (2) the date suit is filed." *Johnson & Higgins*, 962 S.W.2d at 531. Here, the accrual date is <u>August 12, 2013</u>, the date that

17

MPE/MFM filed their Counterclaim against DeJoria. (Doc. 6). The August 12, 2013 date is slightly earlier than September 10, 2013, which is 180 days after March 14, 2013 when DeJoria personally received written notice of MPE/MFM's judgment claim at issue. (Doc. 37-17). Prejudgment interest stops accruing "on the day preceding the date judgment is rendered." Tex. Fin. Code § 304.104; *see also Wheelbarger v. Landing Council of Co-Owners*, 2015 WL 4591962, at *10 (Tex. App.—Houston [1st Dist.] July 30, 2015, no pet.). The end date for prejudgment interest will be known once this Court enters judgment.  By way of example, if this Court enters judgment on February 1, 2016, then prejudgment interest will run from August 12, 2013 to January 31, 2016, which is a period of 2.47 years.

The prejudgment interest calculation under Texas law is: $122,919,146.04 (principal) * 0.05 (interest rate) * 2.47 years (accrual time) = $15,180,514.54 in prejudgment interest.

2.    Interest Under Texas Law Preserves the Value of the Morocco Court Judgment and Is Much Lower than Interest Under Morocco Law

Awarding prejudgment interest under Texas law also is reasonable and equitable in light of the much higher amount of interest under Morocco law.

- Prejudgment interest in Texas starts to run on August 12, 2013 (date of MPE/MFM's instant Counterclaim in this Court), compared to starting to run 3 ½ years earlier in Morocco from December 31, 2009 (date of the Morocco Court's judgment).  Both would continue through the date of this Court's judgment (at which time post-judgment interest will be due under 28 U.S.C. § 1961 (a)).

- The prejudgment interest rate in Texas is 5% compared to 6% in Morocco.[3]

- Assuming this Court enters judgment in the principal amount of $122,919,146.04 on February 1, 2016, the amount of prejudgment interest under Texas law is $15,180,514.54, compared to $44,865,242.47 under Morocco law.[4]

---

[3] "More specifically, the Moroccan Royal Decree of October 9, 1913 as amended by Royal Decree of June 6, 1950, expressly provides that the legal interest rate in civil and commercial matters shall be six percent. This six percent simple interest starts to run from the date of the judgment until it is paid." X-7(Awad Decl.) at ¶ 6.

[4] *See* X-8 (Lahad Decl.) at ¶ 10 (discussing the 6% simple interest calculation).

Using Texas law to award prejudgment interest from the date of MPE/MFM's Counterclaim, rather than awarding interest under Morocco law from the date of the Morocco Court's judgment, results in a nearly $30 million *lower* final judgment from this Court.

B.    MPE/MFM Are Entitled to Postjudgment Interest Under 28 U.S.C. § 1961

In *Boston Old Colony Insurance*, the Fifth Circuit noted that "in diversity cases, postjudgment interest is calculated at the federal rate…." 288 F.3d at 234. In *Meaux Surface Protection*, the Fifth Circuit reversed the district court's denial of postjudgment interest and explained that "post-judgment interest is awarded as a matter of course" and "the matter is not discretionary." 607 F.3d at 172.

Section 1961(a) provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961 (a). That includes judgments recognizing and enforcing foreign judgments and arbitral awards. In *Tricon Energy Ltd. v. Vinmar Int'l., Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013), the Fifth Circuit awarded statutory postjudgment interest and held that "a judgment confirming an arbitration award—like any other civil judgment—is subject to § 1961." In *Mezu v. Progress Bank of Nigeria, PLC*, 2013 WL 6531626, at * 2 (D. Md. Dec. 11, 2013), the court awarded statutory postjudgment interest under § 1961 in its judgment recognizing a Nigerian money judgment. In *Budejovicky Budvar, N.P. v. Czech Beer Importers, Inc.*, 2006 WL 1980308, at *7 (D. Conn. July 12, 2006), the court awarded statutory postjudgment interest under § 1961 in its judgment enforcing a Czech Republic arbitral award. In *Continental Transfert*, 932 F. Supp. 2d at 167, the court awarded statutory postjudgment interest under § 1961 in its judgment enforcing a U.K. arbitral award.

In *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991), the Fifth Circuit reversed and remanded to the district court with instructions to "award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's

19

fees." *See also Reyelts v. Cross*, 968 F. Supp. 2d 835, 851 (N.D. Tex. 2013) (postjudgment interest runs "on all amounts awarded…damages, attorneys' fees, costs, and prejudgment interest").

## V.
## Conclusion

MPE/MFM respectfully request that this Court enter final judgment in accordance with the Fifth Circuit's Opinion, including prejudgment interest under Texas law and postjudgment interest under 28 U.S.C. § 1961. A proposed form of final judgment is attached.


Dated: December 14, 2015

Respectfully submitted,

   */s/ Geoffrey L. Harrison*
Geoffrey L. Harrison
State Bar No. 00785947
gharrison@susmangodfrey.com
Kenneth E. McNeil
State Bar No. 13830900
kmcneil@susmangodfrey.com
John P. Lahad
State Bar No. 24068095
jlahad@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, #5100
Houston, TX  77002
Telephone:  (713) 653-7807
Facsimile:  (713) 654-6666

*Attorneys for Defendants/Counterclaim Plaintiffs Maghreb Petroleum Exploration S.A. and Mideast Fund for Morocco Limited*

20

<u>Certificate of Service</u>

I certify that on December 14, 2015, this document properly was served on counsel of record via electronic filing in accordance with the USDC, Western District of Texas Procedures for Electronic Filing.

*/s/ Geoffrey L. Harrison*
Geoffrey L. Harrison

21